## LONG et al. v. GILBERT.

1. Where there is in fact a sale by one man to another, and by mutual mistake the property sold is erroneously described in the conveyance, equity will correct the mistake between the original parties and their privies in estate or in law, except as against bona fide purchasers without notice.

(a) The evidence warranted the verdict.

2. Where L. obligated by bond to convey to the obligee land erroneously described by mistake, and the obligee assigned the bond to W. & Co., and, on payment of the purchase-money and the surrender by W. of the bond, L. made a deed to W., in a suit by W's grantee against L. to reform the deed for mutual mistake in the description of the property (there being no demurrer), under the facts of the case a charge furnishes no ground for a new trial which treated as immaterial, so far as L. is concerned, whether the bond was assigned to W. or to W. & Co., when it does not appear that any other person except W. was interested in the firm of W. & Co.

3. The instruction of the court relative to notice, when taken in connection with the context, was not erroneous.

4. Where less than four years have intervened, and the plaintiff and those under whom he claims have been in actual possession all the time, though under a deed erroneously describing the property, and the defendant has not been prejudiced, and no issue of laches is made either by the pleadings or the evidence, the plaintiff is not barred of his relief on the ground of want of diligence.

5. An irrelevant charge will not cause a new trial, where it does not prejudice any right of the parties and is not likely to mislead the jury from the true issues of the case.

6. Upon an issue as to whether there was a mistake in giving the correct number of the land lot, in an action to reform the deed for mutual

mistake of the parties it is competent to prove that the plaintiff had perfect paper title and possession of the particular lot conveyed, which was contiguous to the land lot alleged to have been actually bargained, but erroneously described.

Argued July 9,—Decided December 24, 1909.

Equitable petition.    Before Judge Edwards.    Polk superior court.    September 8, 1908.

*L. J. Spinks* and *Janes & Hutchens,* for plaintiffs in error.

*John L. Tison* and *Mundy & Mundy,* contra.

EVANS, P. J.    This is a suit brought by R. H. Gilbert against James Long, W. H. West, and Henry Scott, praying for the reformation of certain deeds and an injunction against the disturbance of the plaintiff's possession of a certain lot of land.    According to the case made by the plaintiff's petition, on April 23, 1903, two contiguous lots of land, numbers 251 and 252, both being in the 21st district and 3d section of Polk county, Georgia, were owned and possessed, respectively, by Gilbert and Long, Gilbert owning lot 251 and Long owning 252.    On that date Long bargained to Henry and Bert Atkins the west half of lot number 252. Afterwards the Atkinses assigned their bond for title to W. J. West & Co., who paid the purchase-money to Long, and on December 15, 1905, Long conveyed the land to W. J. West, who, on October 31, 1906, conveyed it to the plaintiff.    The vendees of James Long and their grantees have been in continuous possession of the west half of lot number 252 since the execution by Long of his bond for title to the Atkinses.    In each of the foregoing conveyances and transactions it was the intention of all the parties thereto to describe the land actually bargained, which was the west half of lot number 252, but from accident or mistake the land in each of the conveyances was misdescribed as being the west half of lot 251.    Recently the defendant Long has warned the plaintiff from further remaining in possession of the land, and has made a pretended sale of the west half of lot 252 to Henry Scott, who did not purchase the land in good faith, nor has he paid any of the purchase-money.    The prayer of the petition is to reform the deeds from Long to West and from West to Gilbert, so as to describe the property as the west half of lot number 252, and to enjoin the defendants Scott and Long from interfering with the plaintiff's possession.    The defendants answered, and the case was tried, resulting in a verdict for the

plaintiff. The defendants Long and Scott made a motion for new trial, which was overruled, and they excepted.

1. Equity will correct mistakes between the original parties and their privies in estate or in law, except as against bona fide purchasers without notice: *Wall* v. *Arrington,* 13 *Ga.* 88; *Wardlaw* v. *Mayer,* 77 *Ga.* 625. The code defines a mistake relievable in equity to be "some unintentional act, or omission, or error arising from ignorance, surprise, imposition, or misplaced confidence." Civil Code, §3973. The testimony discloses that contemporaneously with their purchase the Atkinses went into possession of the western half of lot number 252, believing they had bought the west half of 252, and they remained thereon, improving and cultivating the land, until they transferred their bond for title to West & Company. It was proved that their vendor, Long, admitted that he had sold the western half of lot 252 to the Atkinses and the other half to another person. Indeed, on the trial Long was introduced as a witness by the plaintiff, and admitted in his testimony that the Atkinses went into possession of the western half of lot 252, and that afterwards several parties applied to him to buy lot 252, and he always would say that it had been sold. It appeared that Henry Scott owned and lived on the eastern half of 252 and had agreed upon a division line between the Atkinses and himself. West bought with reference to the possession of the Atkinses. The testimony indubitably points to the conclusion that all the parties to the various conveyances were laboring under the impression, at the time they were severally made, that the land-lot number was correctly given in the different conveyances; and it was not until Long (just before the bringing of the suit) gave the plaintiff written notice, forbidding any trespass upon the land, that the plaintiff was aware the mistake had been made. Henry Scott paid nothing on the purchase-money, nor did he produce on the trial any deed or other muniment of title; and from his knowledge of the facts attending the purchase by the Atkinses, and his agreement upon the division line, the jury were authorized to infer that he did not purchase the land in good faith, and that he had notice that the land sold by Long to the Atkinses was the western half of lot number 252. It is true that on the trial the defendant Long testified that it was not his intention to convey any part of lot number 252, but he exhibited no title or claim of title to lot 251. Not-

withstanding this claim made for the first time after Gilbert's pur-
chase from West, the evidence authorized the finding that he bar-
gained, and intended to bargain, the western half of lot 252 and no
part of lot 251. A case of mutual mistake between the original
parties, and their privies in estate, was clearly shown, and the evi-
dence was sufficient to show that Henry Scott was not a bona fide
purchaser without notice.

2. On the trial of the case the court, in a summary of the plain-
tiff's contentions, used this language: "He says further, that, fail-
ing to pay for it, failing to make payments to James Long, they
transferred the bond for title which they held, from James Long to
W. J. West, or W. J. West & Co., and it is immaterial which, and
that W. J. West paid off the purchase-money to James Long and
took a conveyance." The plaintiffs in error contend, if the bond
had been transferred to W. J. West & Co., that W. J. West would
have no right to surrender the bond to Long and take a conveyance
to himself individually without a transfer of the bond from W. J.
West & Co. to W. J. West. It nowhere appears in the record who
composed the company or firm of W. J. West & Co., or whether it
was merely a trade name. We agree with the trial judge that so
far as the defendants are concerned it is immaterial whether the
bond had been transferred to West or West & Company. The un-
disputed evidence is that West paid the purchase-money and the
defendant Long made him a deed; and that is one of the instru-
ments which is sought to be reformed because of a mutual mistake
in the description of the land.

3, 4. The court charged the jury: "The possession, if any such
possession was had, would put a prudent man on inquiry; and if
you find that inquiry would have led to the trade between James
Long and Atkins, then that would be such notice as would affect
Henry Scott, and the laches or negligence of Gilbert in bringing
this suit would not prevent his having a reformation of this deed,
if he is otherwise entitled to have it reformed as between him and
James Long and West." The criticism upon this charge is that it
amounted to an expression of an opinion on the part of the court
as to what facts would be sufficient to affect Henry Scott with
notice, and would excuse laches or lack of diligence on the part of
Gilbert in bringing this suit. The first criticism is obviously with-
out merit. The code declares that "Possession of land is notice

of whatever right or title the occupant has," and "Notice sufficient to excite attention and put a party on inquiry is notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, is equivalent to knowledge in fixing the rights of parties." Civil Code, §§ 3931, 3933. The instruction of the court was but an application of these sections of the code to the facts of the case. Possession of land not only puts a prudent man on inquiry as to the title, but is notice of whatever right or title the occupant has; and if due inquiry would have disclosed that the Atkinses purchased the western half of lot 252 from Long, then a subsequent purchaser would have been affected with notice of this fact. As to the other criticism, that the charge amounted to an expression of opinion that the laches or negligence of Gilbert in bringing the suit would not prevent him from having reformation of the deed from James Long to West, if he was otherwise shown to be entitled to have it reformed, we do not think the language of the court, although it amounted to an expression of opinion, is ground for a new trial. This suit was brought within four years from the date of the first transaction, and less than four months after Gilbert acquired title, and immediately upon the discovery that the property was misdescribed. Since the sale by Long to the Atkinses the latter and their successors in title had been in continuous possession of the land, and nothing had transpired to the prejudice of the defendant Long. The laches or want of diligence of the plaintiff was not made an issue either in the pleadings or evidence. In *Wall* v. *Arrington,* supra, it was held that "Where nine years had intervened, and the complainant had been in actual possession all the time, though under an erroneous deed, and the defendant has not been prejudiced, there is no pretext to stop the application for relief on the ground of want of diligence." See Civil Code, § 3974.

5. One of the issues in the case was whether Henry Scott was a bona fide purchaser from James Long prior to the filing of the suit. Scott did not appear as a witness or exhibit any title or claim of title to the land in controversy. The defendant Long testified that he had sold the land to Scott for $250, and made him a deed. There was testimony strongly suggestive that this conveyance was not executed in good faith, and that none of the purchase-money had been paid. The court charged: "A man may have a deed to

land and still not be a purchaser for value—what is called a voluntary deed.    That sort of deed does not protect a man; it must be a purchase for a valuable consideration." This charge is objected to as containing an erroneous statement of law, and not applicable to the facts of the case.    It was the manifest intention of the court that this charge should apply to the phase of the defendant's case if the jury should find that Scott may have given his notes in pursuance of a pretended sale.    While ,we think the instruction was hardly adapted to the case as made, in view of the other instructions, and the evidence, it is hardly conceivable that the jury was led astray from the real issues of the case, or that the defendants were in any manner prejudiced by the charge.

6.    Over objection of plaintiffs in error, on the ground of irrelevancy, the court allowed the plaintiff to prove paper title to lot of land number 251, the last link in the series of conveyances being a deed from Mrs. Mary E. Dower to the plaintiff, dated and recorded June 15, 1899.    The proof of title in the plaintiff at the time of the execution of the bond for title by Long to Atkins was relevant to show that the defendant James Long never had title to lot number 251; and the plaintiff was entitled to support his contention that Long intended to convey the west half of lot number 252 by showing that he never had title to the contiguous lot number 251.          *Judgment affirmed.    All the Justices concur.*