### 15018.  SOUTHERN RAILWAY CO. *v.* WESSINGER.

1. The opinions of experts, on any question of science, skill, trade, or like questions, are always admissible; and such opinions may be given on the facts as proved by other witnesses.  The testimony of an expert, as to his opinion as such, is admissible upon any matter, if the opinion given relates to scientific or technical knowledge.  The court did not err in allowing a witness of nine years experience as an engineer to give his opinion as to what would cause described violent and unusual jerking of the "reverse lever," as an appliance upon engines in general, although he was not acquainted with the particular kind of gear, affecting the operation of such lever, with which the engine was equipped whereon, by the jerking of such lever, the plaintiff suffered the alleged injury for which he sued.

2. If it shall appear in an action under the Federal employer's liability act that the plaintiff was injured by the concurring negligence of himself and the defendant, he cannot recover full damages, but only a proportional amount, bearing the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both.  As against the carrier, the charge of the court was not erroneous because of a failure to state this rule more explicitly.

3. The excerpt from the charge of the court upon the subject of the credibility of the witnesses, complained of in ground 7 of the motion for new trial, was not cause for setting aside the verdict upon the hypothesis

that it was "calculated to mislead the jury into the belief that they would determine the case according to the rule propounded by the court, rather than determine where the preponderance of the evidence lay," it not being alleged that the rule *as stated* in the charge was incorrect.

(*a*) In the absence of a timely written request, it is ordinarily not error for the court to fail to give in charge section 5731 of the Civil Code, defining preponderance of evidence.

4. There was some evidence warranting the charge complained of in ground 6 of the motion for a new trial, upon the subject of liability for negligence which, though not the original or sole cause of an injury, yet aggravates it and adds to its extent.

5. The court charged the jury as follows: "If a man is entitled to have a verdict for a certain amount of money for lost capacity to earn money in the future, why the verdict would give him the money all at once. That is to say, if he was allowed so much a year at the end of any particular period,—like five, ten, fifteen, or twenty years, or any other period,—you would give him all the money at once; and it is worth more to a man to have it all given to him at once than to pay it to him along in the future. To give him five dollars to-day would be worth more to him than to cause him to wait five years and give him so much money each year. So if any amount is allowed him for permanent impairment of his capacity to labor and earn money, that ought to be reduced to its present value, and the rate of reduction to its present value is seven per cent., that being the regular rate of interest in this State." There is no cause for a new trial merely in the fact that the court omitted the phrase "per annum" immediately following "seven per cent." The excerpt did not intimate an opinion that the plaintiff had suffered permanent impairment of his earning capacity.

6. Under a denial of the allegations in the plaintiff's declaration, no other defense is admissible than such as disproves the plaintiff's cause of action; all other matters in satisfaction or avoidance must be specially pleaded. Civil Code (1910), § 5630. Whether this rule would be applicable so as to preclude an instruction upon the law in relation to the defense of assumed risk, not specially pleaded, where the defense, if involved, is so only under the evidence of the plaintiff, the assignment that "the court erred in failing to charge the jury upon the subject of assumption of risk, the question of assumption of risk inhering in the employer's liability act of Congress, and it being incumbent upon the court to charge the jury upon the question of the assumption of risk," is too general and indefinite to present any question for decision. Furthermore, there was no evidence in the case under consideration to warrant an instruction upon the subject.

7. There was some evidence to authorize a finding in favor of the plaintiff. This court cannot hold, as a matter of law, that the amount awarded him was excessive under the evidence. The court did not err in overruling the motion for a new trial.

Decided April 24, 1924. Adhered to on rehearing, August 11, 1924.

Damages; from Fulton superior court—Judge Ellis. August 3, 1923.

Application for certiorari was denied by the Supreme Court.

*McDaniel & Neely,* for plaintiff in error.

*J. Caleb Clarke, Mark Bolding,* contra.

BELL, J.   C. L. Wessinger recovered a verdict for $15,000 against the Southern Railway Company in an action under the Federal employer's liability act, and the company has excepted to the overruling of its motion for a new trial.

The plaintiff was a fireman on a freight-engine referred to in the record as No. 4567, and claims to have been injured in Greenville, South Carolina, immediately following a run from Atlanta, while he was attempting to "thump" the engine, under orders from the engineer, that the latter might discover the location of certain troubles or defects which were indicated by noises and knocks in the engine en route.   It appears in the record that the act of thumping an engine is accomplished by applying the brakes, and then giving the engine steam and putting it in gear.   It is shown that an engineer, when standing upon the ground and observing the engine as it attempts to run while thus held fast by the brakes, may detect, in a measure, its condition as to the existence of certain defects.   The plaintiff says that when, in undertaking to thump the engine as directed, he had pulled the reverse lever, it suddenly jerked forward, snatching him with it, and causing him to strike the lever and the boiler-head, with the result that he was injured as alleged.   He claims that the behavior of the lever was caused by certain worn and defective parts, and that in respect of these the defendant was negligent.   The defendant admitted the plaintiff's employment, together with facts which would render the employer's liability act applicable if liability existed.   In other respects the answer was a general denial.

1.   In ground 1 of the amendment to the motion for a new trial the defendant contends that the court erred in admitting certain testimony of one Skipper, whom the plaintiff had offered as an expert for the purpose of showing hypothetically the cause of the behavior of the lever.   The particular engine was equipped with the Walcheart gear.   The plaintiff's attorney propounded a question which would have elicited an answer as to the cause of the jerking of the lever on the particular engine with the particular gear.   The defendant interposed an objection that the witness was not an expert, and further that he had previously testified that

he was not at all acquainted with this type of gear. The question appears to have been improper. The witness, however, did not answer responsively to the question as propounded, but proceeded to testify generally with respect, as he said, to "most any engine." There is no objection that the answer was not responsive. The witness further said: "The reverse levers on the engines are practically the same." We find no error in the court's ruling. "The opinions of experts, on any question of science, skill, trade, or like questions, are always admissible; and such opinions may be given on the facts as proved by other witnesses." Civil Code (1910), § 5876. The witness had testified to an experience of nine years as a railroad engineer. This was sufficient to allow his evidence to go to the jury as that of an expert upon the subject or question under investigation. Compare *Macon Railway & Light Co.* v. *Mason,* 123 *Ga.* 773 (5) (51 S. E. 569). Nor was the fact that the witness was not acquainted with the operation of the particular gear with which the engine in question was equipped a sufficient cause for excluding his evidence altogether. It had some relevancy to the subject-matter of the inquiry, and it was for the jury to determine its value as applied thereto. "The testimony of an expert, as to his opinion as such, is admissible upon any matter, if the opinion given relates to scientific or technical knowledge. The weight of such testimony, and whether its application to the proved facts is illustrative of the particular transaction under investigation, is a question for the jury." *McClendon* v. *State,* 7 *Ga. App.* 784 (68 S. E. 338). Compare, in this connection, the ruling of this court in *Augusta Ry. Co.* v. *Arthur,* 3 *Ga. App.* 513 (2) (60 S. E. 213), that "the admission of testimony as to experiments must largely rest in the discretion of the trial judge; and the exercise of this discretion will not be controlled, unless manifestly abused. The weight to be attached to such testimony is for the jury, and varies according to the circumstances of similarity which the jury may find to exist between the experiment made or observation taken and the actual occurrence whose facts and features are under investigation." This phase of the question would appear to be conclusively settled against the plaintiff in error by the decision of the Supreme Court in *Atlanta Ry. & Power Co.* v. *Monk,* 118 *Ga.* 449 (4-6), 456 (45 S. E. 494). This ruling is controlling also of the next ground of the motion, in which it is

objected that the court erred in propounding to the same witness a question which called for answer by conclusion. It is noted further that this ground does not show that any objection was made to the question or to the answer thereto at the time.

2. Error is assigned upon the following excerpt from the charge of the court: "That law further says that in all actions hereinafter brought against any such common carrier by a railroad, under and by virtue of any of the provisions of this act, to recover damages for personal injuries to an employee, the fact that the employee may have been guilty of contributory negligence shall not bar recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. Now if this plaintiff shows that he was injured by the alleged negligence of the defendant, or one of the allegations of negligence, then if it shall appear to you that the plaintiff was negligent, but that his negligence was not the sole cause of the injury, then he may recover; if the evidence convinces you that he was negligent to some extent, but not amounting to bringing about the sole cause of the injury, then he would still be entitled to recover, if he was guilty of some negligence, but you ought to diminish the amount you allow him, in proportion as his negligence was made to appear." It is urged that this charge is error for the reason that the court "failed to instruct the jury with respect to the question of damages, that in diminishing the amount of the recovery in proportion to the amount of negligence attributable to such employee, this was with relation to the total negligence of both the employer and the employee." This does not state the assignment in full, but comprehends its substance.

This ground of the motion might be disposed of under the rule that it is not a good assignment of error on a portion of the judge's charge which states a correct principle of law applicable to the case, that some other correct and appropriate instruction was not given (*Smith* v. *Duhart,* 152 *Ga.* 554 (3), 110 S. E. 301); but, regardless of this rule of practice, we entertain the opinion that the court's charge as a whole, in the absence of appropriate request, sufficiently informed the jury that if the defendant was liable, but if the plaintiff was contributorily negligent, he could not recover "full damages, but only a proportional amount, bearing the same relation to the full amount as the negligence attributable to the

carrier bears to the entire negligence attributable to both." See Norfolk & Western Ry. Co. v. Earnest, 229 U. S. 114 (5) (33 Sup. Ct. 654, 57 L. ed. 1096). The court elsewhere charged the jury in relation to the same subject as follows: "To put that in a plain way, suppose that a plaintiff—and these figures are not applicable to this case, but I am simply giving you a rule for your guidance—suppose a plaintiff under this employer's liability act was to sue a defendant, and the jury were to determine that he had a right to recover, and they were convinced that the defendant's negligence was not the sole cause of the injury, but that the plaintiff was guilty of some negligence, then you would take a case like this: Say that a plaintiff would be entitled to recover $3,000, —just to illustrate, and not applying to this case,—but the plaintiff was negligent to the extent of one third, and the result of this accident or injury was brought about by the negligence of the plaintiff to that extent, then you would deduct one third or one thousand dollars of the amount from the verdict. There would be other questions that would enter into the amount of the plaintiff's recovery, if he is entitled to recover, which the court will explain to you."

The rule upon this question, under the employer's liability act of this State (Ga. L. 1909, p. 160), contemplates the proportionate diminution of the plaintiff's damages where he is contributorily negligent, by a comparison of the negligence of the plaintiff with the negligence of the defendant. *Ga. & Fla. Ry. Co.* v. *Newton,* 140 *Ga.* 463 (79 S. E. 142); *Pickett* v. *Central of Ga. Ry. Co.,* 138 *Ga.* 177 (74 S. E. 1027, Ann. Cas. 1913C, 1380); *Central of Ga. Ry. Co.* v. *Larsen,* 19 *Ga. App.* 413, 417 (91 S. E. 517). It is quite clear that the Georgia rule requires a greater diminution of the recovery on account of the plaintiff's concurring negligence, and we could hardly say that the defendant would be injured if the court had not explained fully the Federal rule. Indeed, in the Earnest case, 229 U. S. 114, supra (the principal authority cited in support of this ground of the motion), it appears that the charge excepted to instructed the jury that the contributory negligence of the plaintiff would go "by way of diminution of damages in proportion to his negligence as compared to the negligence of the defendant." The court said that these words were not happily chosen, but were possibly "not prejudicial to the defend-

ant;" disposing of the assignment, however, adversely to the plaintiff in error upon a rule of practice. We conclude that there is no merit in this ground of the motion, and, with it, in like manner dispose of grounds 5 and 10, which in different forms would raise the same question. Ground 8, assigning error upon another portion of the charge, is defective under the rule of practice which we have quoted above from *Smith* v. *Duhart.*

3. In ground 7 an instruction upon the subject of the credibility of the witnesses is complained of. It is urged that, the court having failed to define "preponderance of evidence," and having failed to give in charge the rule with reference to the credibility of witnesses as contained in the Civil Code, § 5732, the excerpt as given was "calculated to mislead the jury into the belief that they would determine the case according to the rule propounded by the court, rather than determine where the proponderance of the evidence lay." It is not alleged that the rule as given by the court on the subject of the credibility of witnesses was incorrect, even though it may not have been in the language of the code section, or identical therewith in principle. One who would set aside a verdict and judgment must show error, and none here is even alleged.

Ground 9 alleges that the court did not charge the jury with reference to the burden of proof and the preponderance of evidence, and failed to charge the jury the meaning of the legal preponderance of evidence, as contained in the Civil Code, § 5731. A reference to the charge of the court discloses that the court did instruct the jury quite fully upon the burden of proof; and there was clearly no error in failing to give in charge the code section mentioned, in the absence of a timely written request. See *Ga. &c. Ry. Co.* v. *Lasseter,* 122 *Ga.* 679 (6) (51 S. E. 15); *Seaboard Air-Line Ry.* v. *Randolph,* 136 *Ga.* 505 (3) (71 S. E. 887).

4. Error is assigned in ground 6 upon a charge that if the plaintiff "was injured by sickness that occurred before the injury, the defendant would not be liable at all for that; but if a man was sick and the defendant did anything wrongfully by which his condition was aggravated, the jury might consider that, but of course it would be subject to the consideration of what his condition was before he was injured." It is insisted by the plaintiff in error that the charge was not warranted either by the pleadings

or the evidence, and that it was "calculated to mislead the jury into the belief that any act on the part of the defendant which might have aggravated a former condition would be the subject-matter of damages, whereas there was no contention on the part of the plaintiff or specification of damages upon which this portion of the charge could be predicated." It appears that the plaintiff, several years before the time of his alleged injury, had suffered from pleurisy, and while he claimed that he had been fully restored, the jury were not obliged, under the evidence, to accept this contention, but were amply authorized to infer that the negligence of the defendant, if existing, was not the sole cause of the plaintiff's injured condition. We take it that the charge was intended to inform the jury that the defendant would not be responsible for any physical impairment which the plaintiff had suffered by reason of disease, but would be liable for any negligence which may have aggravated or added to such impairment. The testimony of physicians, and even of the plaintiff himself, would have authorized the charge; and we do not think it was erroneous for any reason assigned.

5. The court charged the jury as follows: "If a man is entitled to have a verdict for a certain amount of money for lost capacity to earn money in the future, why the verdict would give him the money all at once. That is to say, if he was allowed so much a year at the end of any particular period,—like five, ten, fifteen, or twenty years, or any other period,—you would give him all the money at once; and it is worth more to a man to have it all given to him at once than to pay it to him along in the future. To give him five dollars to-day would be worth more to him than to cause him to wait five years and give him so much money each year. So if any amount is allowed him for permanent impairment of his capacity to labor and earn money, that ought to be reduced to its present value, and the rate of reduction to its present value is seven per cent., that being the regular rate of interest in this State." It is assigned that this charge intimated an opinion by the court that the plaintiff had suffered a permanent impairment of his capacity to labor and earn money, but we cannot agree that it is subject to this objection.

It is insisted further, however, that the charge "was calculated to mislead the jury into the belief that the reduction, instead of

being based upon seven per cent. per annum, that they could find the full damages which he might have suffered under this item and simply deduct seven per cent. therefrom." The record shows that the court further charged the jury, upon this subject, that they might make any legal calculation known to them to determine the present value. In *Macon Ry. & Light Co.* v. *Mason,* supra, the court said: "That the jury may clearly understand their duty with respect to reducing to its present cash value the gross amount which they may find to fairly represent the loss in earning capacity which the injured party has sustained, the court, in charging upon this subject, should make choice of language which is not calculated to confuse the jury because of inaccuracy of expression." The only complaint here, however, in regard to the language used, or as to any fault in the charge, is aimed at the failure of the court to employ the phrase "per annum" in connection with the expression "seven per cent." Thus the sole question for determination is, whether the jury were probably misled by the simple omission. The "seven per cent." referred to in the excerpt was explained to be the legal rate of interest in this State. Even assuming that the jurors, who are to obtain the law from the court, should not be presumed to know as law that the legal rate of interest is fixed at *a rate per annum,* we should, nevertheless, think that the calculation of interest even for a period of years is so commonly upon an annual basis that the jury in their presumed intelligence could not have failed to understand that in making the computation of the present cash value they should do so on the basis of seven per cent. for *each year,* rather than merely by a deduction of seven per cent. from the entire loss by reason of the plaintiff's destroyed or diminished earning capacity, for which they might find that the defendant was liable, the court having illustrated the problem before them by a reference to different periods of years. The phrase "per annum" as omitted from the charge must evidently have been supplied by the jury; and with these words supplied, it does not appear that the plaintiff in error would complain any further of this charge. There is no merit in the assignment made. *Merchants & Miners Transportation Co.* v. *Corcoran,* 4 *Ga. App.* 654 (6) (62 S. E. 130) ; *Standard Oil Co.* v. *Reagan,* 15 *Ga. App.* 571 (9) (84 S. E. 69) ; *Georgia Railroad* v. *Pittman,* 73 *Ga.* 325 (2).

6.   Ground 11 alleges that "the court erred in failing to charge the jury upon the subject of assumption of risk, the question of assumption of risk inhering in the employer's liability act of Congress, and it being incumbent upon the court to charge the jury upon the question of assumption of risk." It is urged by the defendant in error that the failure of the defendant to plead the defense of assumed risk was a sufficient reason for the omission of the court to instruct the jury upon the law applicable to such defense, and a number of authorities are cited in support of this position.   Alabama Great Southern Ry. Co. v. Sketzy, 196 Ala. 25 (71 So. 335); Foley v. Pioneer Mfg. Co., 144 Ala. 182   (40 So. 274); Phillips v. Union Pacific Ry. Co., 100 Neb. 157 (158 N. W. 966); Evans Laundry Co. v. Crawford, 67 Neb. 153 (93 N. W. 177); Maxon v. Case Threshing Machine Co., 81 Neb. 546 (116 N. W. 281); St. Louis &c. R. Co. v. Howard, 124 Ark. 588 (188 S. W. 14).   See also Duffey v. Consolidated Black Coal Corp., 147 Iowa 225 (2) (124 N. W. 609, 30 L. R. A. (N. S.) 1067); *Sparta Oil Co.* v. *Russell,* 6 *Ga. App.* 293 (2) (65 S. E. 37).

If this defense was involved under the evidence, it was so only by the testimony of the plaintiff himself; and it may be true that in such a case the defendant would be entitled to a charge of the law applicable thereto without a special plea of the defense (New York &c. R. Co. v. Vizvari, 126 C. C. A. 632 (2), 210 Fed. 118, L. R. A. 1915C, 9; *Atlantic Coast Line R. Co.* v. *Tomlinson,* 21 *Ga. App.* 704 (2 b), 94 S. E. 909); but the rule would perhaps be otherwise if the defense does not appear in the plaintiff's testimony, because it is provided in our Civil Code, § 5636, that "under a denial of the allegations in the plaintiff's declaration, no other defense is admissible except such as disproves the plaintiff's cause of action; all other matters in. satisfaction or avoidance must be specially pleaded."

The defense of assumed risk is founded in the common law. The Federal employer's liability act merely *saves* it, with certain modifications.   New York &c. R. Co. v. Vizvari, supra; Seaboard Air-Line Ry. v. Horton, 233 U. S. 492 (6) (34 Sup. Ct. 635, 58 L. ed. 1062); Jacobs v. Southern Railway Co., 241 U. S. 229 (36 Sup. Ct. 588, 60 L. ed. 970); Chesapeake & Ohio Ry. Co. v. DeAtley, 241 U. S. 310 (36 Sup. Ct. 564, 60 L. ed. 1016); Boldt v. Pennsylvania R. Co., 245 U. S. 441 (38 Sup. Ct. 139, 62 L. ed.

382); *Atlantic Coast Line R. Co.* v. *Tomlinson,* 21 *Ga. App.* 704 (2) (94 S. E. 909). As was said in the Horton case, "the elimination of the defense of assumption of risk by the employer's liability act of April 22, 1908, § 4, in any case where the violation by the carrier of any statute enacted for the safety of the employees contributed to the injury or death of the employee, plainly evidences the legislative. intent that in all other cases such assumption of risk shall have its former effect as a complete bar to the action."

Whether or not it should be pleaded in order to be availing would depend upon the local rules of practice. Central Vermont Ry. Co. v. White, 238 U. S. 507 (4) (35 Sup. Ct. 865, 59 L. ed. 1433, 1436); Chesapeake & Ohio Ry. Co. v. DeAtley, supra. Whether the defendant can justly complain of the court's failure to charge upon the law applicable to such a defense without having specially pleaded it, we are satisfied that this ground of the motion does not present a sufficient cause for setting aside the verdict, for two reasons. First, the assignment is too general. It should have been more specific in reference to the particular principle which the court should have charged in order that the trial judge could himself have intelligently corrected the error, if any existed, when he passed upon the motion for a new trial. There are two rules of law applicable to the defense of assumption of risk to an action under the Federal employer's liability act, depending upon the nature of the risk assumed; and the court below was not informed, nor is this court, as to which of these rules the plaintiff in error would deem to be involved under the evidence. One rule is applicable where the risk is normally and necessarily incident to the employment. In the absence of a special contract the servant assumes such ordinary risk, without qualification. The other rule has reference to extraordinary hazards, which the servant does not assume until he has notice thereof, unless the dangers arising therefrom are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them. The negligence of the master or of the fellow servant is included within the latter class. See Civil Code (1910), § 3131; Chicago &c. Ry. Co. v. Ward, 252 U. S. 18 (2) (40 Sup. Ct. 275, 64 L. ed. 430); Seaboard Air-Line Ry. v. Horton, supra; Boldt v. Pennsylvania R. Co., supra; Duffey v. Consolidated Black Coal Corp., supra. As to

36

the sufficiency of the assignment of error, in view of these different rules, see the following: *Smith* v. *State,* 125 *Ga.* 300 (54 S. E. 124) ; *Spence* v. *Morrow,* 128 *Ga.* 722 (58 S. E. 356) ; *McElwaney* v. *MacDiarmid,* 131 *Ga.* 97 (6) (62 S. E. 20) ; *Wall* v. *State,* 153 *Ga.* 309, 323 (112 S. E. 142) ; *Wilson* v. *State,* 156 *Ga.* 42 (118 S. E. 427).

The second reason why we think that the ground of the motion here considered is without merit is founded upon a total absence of evidence involving the question of assumption of risk. The plaintiff alleged and testified that on the run from Atlanta to Greenville the engine made loud and unusual noises and knocks, and said in his testimony that it appeared that the engine would shake to pieces. Irrespective of whether, if some accident had happened while the engine was thus running, the occurrence would have been one of which the plaintiff would possibly have had sufficient warning, the run was completed without a mishap and the arrival in Greenville accomplished in safety. There was no evidence whatsoever that the jerking of the lever with such violence as would likely be attended with danger was a normal occurrence or one ordinarily incident to its manipulation in the manner undertaken by the plaintiff at the time he alleges he was injured. Its action appears to have been unusual, and the hazard resulting therefrom extraordinary, of which the plaintiff could not have been found to have assumed the risk, in the absence of evidence that the danger was known to him or was so obvious that an ordinarily careful person under the circumstances would observe and appreciate it. See Central Vermont Ry. Co. *v.* White, Chicago &c. Ry. Co. *v.* Ward, and *Sparta Oil Co.* v. *Russell,* supra. Thus we do not discover any error in ground 11.

7. It is contended that the verdict was excessive. It appears that at the time of the alleged injury the plaintiff was 26 years of age, earning between $175 and $200 per month. There was some evidence tending to show that at the trial he was in a desperate physical condition, practically if not totally disabled; that his disability will in all probability be permanent, and that it was caused by the occurrence of which he complains against the defendant. The testimony of the plaintiff himself was supported by that of a physician; and while there was evidence introduced on the part of the defendant, including that of several physicians,

to the effect that the plaintiff's injury was solely the result of the disease of pleurisy, the jury were the tribunal to solve this issue, and they did not decide it in favor of the plaintiff without some evidence. We cannot say that the verdict was excessive.

It is further contended on the part of the plaintiff in error that there is no evidence of the negligence of the defendant as alleged, and that the verdict is therefore unsupported. We recognize the rule that in a case of this sort no presumption arises that the defendant was negligent merely from proof that the plaintiff was injured by the operation of the appliance, but that the burden is on him to bring evidence to establish that the defendant was negligent in one or more of the ways alleged in the petition. The fact, however, that the lever, as testified to by the plaintiff, gave a sudden and unusual jerk by which he was injured, is some evidence of such negligence, the occurrence being one, as some of the evidence tended to show, which would not have happened if the defendant had discharged its duty of care. The jury were authorized to apply the maxim res ipsa loquitur and, from the circumstances to which we have alluded, to infer that the defendant was negligent as alleged. See *Bonita Theatre* v. *Bridges,* 31 *Ga. App.* 798 (122 S. E. 255), and citations; *Payne* v. *Rome Coca-Cola Bottling Co.,* 10 *Ga. App.* 762 (73 S. E. 1087).

The plaintiff in error insists that this maxim cannot be applied in cases arising under the Federal employer's liability act, but we cannot concur in the position taken. In Great Northern Ry. Co. *v.* Wiles, 240 U. S. 444 (36 Sup. Ct. 406, 50 L. ed. 732), the court said: "The application of the doctrine to cases like that at bar is disputable [citing Patton *v.* Texas & Pacific Ry. Co., 179 U. S. 658 (21 Sup. Ct. 275, 45 L. ed. 361); Looney *v.* Metropolitan R. Co., 200 U. S. 480, 486 (26 Sup. Ct. 303, 50 L. ed. 564)]. We, however, do not have to go farther than to indicate the dispute." It is not clear to us whether by this language the court intended reference to the case as one arising under the employer's liability act, or merely as one falling under the general law of master and servant. The Patton and Looney cases both arose prior to April 22, 1908, the date of the passage of the liability act. They were referred to again in Minneapolis & St. Louis R. Co. *v.* Gotschall, 244 U. S. 66 (37 Sup. Ct. 598, 61 L. ed. 995), in which the court virtually recognized that

even under the rulings in those cases negligence might be inferred from the mere happening of an accident under extraordinary circumstances. The application of the maxim cannot have the effect of raising a presumption that the defendant is negligent, or of relieving the plaintiff of his accustomed burden of proof. It is merely a rule of evidence, and the party who relies upon it simply says that from proof of certain facts the jury will be authorized but not required to infer the existence of the negligence alleged, and that he has thus carried the burden of making a prima facie case. Those decisions which uphold the doctrine merely recognize the right of a party to prove his case by circumstantial as well as direct evidence. We do not understand that there is anything contained in the Federal employer's liability act or in any of the decisions of the Supreme Court of the United States construing it which precludes an application of the maxim in question merely because the case in hand arises under that act. Richey on Federal Employers' Liability Act (2d. ed.), 330, § 163; 1 Roberts Federal Liability of Carriers, 951, § 544. In the well-considered case of Central R. Co. v. Peluso, 286 Fed. 661, the United States Circuit Court of Appeals, Second Circuit, after an examination of numerous decisions, including all of those by the Supreme Court of the United States just referred to, announces the conclusion: "The doctrine of res ipsa loquitur is applicable to cases between master and servant, including cases under the Federal employer's liability act." See, also, McCalmont v. Pennsylvania Co., 273 Fed. 231 (1), 235; Philadelphia &c. R. Co. v. Eisenhart, 280 Fed. 271 (2), 275.

To examine further into the evidence: the witness Skipper attributed such unusual jerking of a lever (such as injured the plaintiff in this case), "on most any engine," to some of the defects which the plaintiff alleged as negligence. While this witness was unacquainted with the Walcheart gear, with which the engine in question was equipped, and while it would appear that the testimony of numerous witnesses introduced by the defendant for the purpose of rebutting Skipper's testimony had in contemplation this type of gear, none of the defendant's proof can be said to have conclusively established that the Walcheart gear would not cause a behavior on the part of a lever, in case there were defects of the

nature alleged, such as Skipper had testified would result from such defects.

If, consistently with the testimony of Skipper that the jerking of the lever would be generally indicative of defective appliances, the defendant had shown by positive, unequivocal, and unimpeached testimony that there was yet, without question, an exception in the case of the Walcheart gear, we should think, as a matter of law, that the evidence of the particular witness was rebutted; but such is not the case. There was in the testimony of the various witnesses no comparison of the operation or control of the Walcheart gear with that of any other type of gear.

" 'Prima facie evidence' is such evidence as in judgment of law is sufficient, and if not rebutted remains sufficient. It may, in addition to other ways, be rebutted by developing additional undisputed facts consistent with its truth, but tending to an opposite conclusion." *Republic Truck Sales Corp.* v. *Padgett,* 30 *Ga. App.* 474 (12) (118 S. E. 435). See *Ga. R. &c. Co.* v. *Smith,* 83 *Ga.* 626 (6) (10 S. E. 235); *Gainesville & Dahlonega Ry. Co.* v. *Austin,* 127 *Ga.* 120 (5) (56 S. E. 254). It is possible for an effort at rebuttal by the method just stated to succeed as a matter of law (compare *Neill* v. *Hill,* 32 *Ga. App.* 381, 123 S. E. 30), but where the method adopted is merely an attack upon the truth or trustworthiness of the evidence sought to be rebutted (*Ga. R. &c. Co.* v. *Smith,* supra), the success or failure of the effort is ordinarily, if not always, to be determined only by the finding of the jury.

There was no direct testimony of such a character as to conclusively rebut the inference of negligence which the jury were authorized to draw from the violent and unusual jerking of the lever, under the circumstances detailed in the testimony of the plaintiff. See *Whiddon* v. *Hall,* 155 *Ga.* 57 (6) (118 S. E. 347); *Redd* v. *Lathem,* 32 *Ga. App.* 214 (123 S. E. 175). Furthermore, the engineer in charge of the particular engine testified: "If the engine was in good fix and a man was thumping it, like I said, and had steam in the cylinders, it would not jump forward. I have never seen one shoot forward. I could not say an engine would do it out of fix. I never saw one do it. I have never seen one do that. If it would do that I would say that it was out of

fix." This witness appears to have been an expert capable of giving conclusions for the consideration of the jury.

The plaintiff introduced as a witness one Mitchem, the defendant's back-shop foreman, in. charge of its "wrecking shop," who testified that the engine did not come into the shop until twenty-two days after the alleged accident. He furnished a list of the repairs then made, and testified that none of them had to do with the reverse lever, and that "there was nothing wrong . . that would cause the reverse lever to jerk in any unusual way." The plaintiff was not bound by every fact testified to by this witness, although introducing him. "While a party cannot [as a general rule] impeach his own witness, he may nevertheless contradict his testimony and show that the facts are different. Civil Code [of 1895], § 5290 [Civil Code of 1910, § 5879]; *Skipper* v. *State,* 59 *Ga.* 63; *Christian* v. *Macon &c. R. Co.,* 120 *Ga.* 314, 317 (47 S. E. 923)." *Carter* v. *Martin,* 7 *Ga. App.* 216, 219 (66 S. E. 630). There was a sharp issue of veracity between the plaintiff and this witness upon a material point, so that from this fact alone. the credibility of this witness became a question for the jury. While there was much testimony. on behalf of the defendant that the lever could not have jerked as the plaintiff claimed, whether there were defects or not, it cannot be said that the jury were not authorized to find from the evidence as a whole that the lever did jerk, and that the cause of its jerking was the negligent condition of certain mechanisms as alleged. "A jury in arriving at a conclusion upon disputed issues of fact may believe a part of the testimony of a witness or witnesses, and reject another part thereof, it being their duty to ascertain the truth of the case from the opinion they entertain of all the evidence submitted for their consideration." *Sappington* v. *Bell,* 115 *Ga.* 856 (42 S. E. 233).

The evidence of negligence may have been slight; but this court cannot set aside the verdict because it may think the preponderance was in favor of the defendant. It was said in the Patton case, supra, that "where the testimony leaves the matter uncertain, and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation

in the testimony for that conclusion." We do not question the soundness of this proposition. It would be applicable in any case where a servant is seeking to hold his master liable for negligence. As we have already seen, the case in which the language was used was not one arising under the employer's liability act, and has no special applicability to a case of that character. See *Georgia Railway & Electric Co.* v. *Harris,* 1 *Ga. App.* 714 (57 S. E. 1076); *Carroll* v. *Atlanta Paper Co.,* 7 *Ga. App.* 584 (67 S. E. 680). But it does not follow, because it may appear from the testimony that the injury may have been caused in one of two or more ways, that the jury should not be allowed to determine in what way it was caused, if the facts and circumstances in evidence warrant a reasonable inference that it was caused in one of the ways alleged in the complaint for which the master would be liable. Otherwise, the plaintiff would be required to prove the cause of the injury to a certainty, where evidence was adduced suggesting the possibility of some other cause than that alleged. Such proof is not required in a civil action, but it is enough if the evidence is sufficient to satisfy the minds of the court and jury of the reasonable probability of the truth of the allegations. See Richey on Federal Employers' Liability Act (2d ed.), 330, § 163.

We cannot hold that the verdict is unsupported, and, in view of the several rulings made above, we conclude finally that the trial judge did not err in overruling the motion for a new trial.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*